Good morning, I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Ricardo Cruz. I'd like to reserve two minutes for rebuttal. Reasonable suspicion cannot be based on Agent Granado's literally incredible testimony. Counsel, let me just stop you right there. It seems to me the premise of your entire argument is that the district court was required to disbelieve Granado in every respect. And I don't know what authority there is for that proposition, that the district court has to disbelieve 100% of what a witness says because there are some problems, admittedly. But what's your best case saying that that's a requirement for the district court to disbelieve everything? First is the Supreme Court decision in Anderson, which talked about implausibility and internal inconsistencies. We also cited in our briefs the Thorn case from the Second Circuit that talked about appellate review where the district court didn't base its credibility determination on the demeanor, the manner, the behavior, the personal observations of the witness, but instead you can look at the substance of the witness's testimony, both in the transcripts and the reports. But there's an explanation here. Basically, I'm oversimplifying, but basically he said, listen, I signed off on something without really paying close attention to it, and once I realized it contained mistakes, I fixed it. So why can't the court credit that based on demeanor or plausibility or everything else? That was one of many inconsistencies. And with respect to that May 14th report, Your Honor, Agent Granado told the judge I wrote something down for Agent LePage to prepare this report, which I then signed three times and I didn't read it, and now everybody agrees it's riddled with inconsistencies. When I asked Agent Granado, where are the notes? Because that was the one opportunity to obtain extrinsic evidence that could be used to gauge his credibility. And again, he had told Judge Christensen he had written something down for Agent LePage to prepare this report, which he signed but didn't read, and Agent Granado admitted there were no notes. So that was the one opportunity to obtain extrinsic evidence, and it wasn't available. With respect to the extrinsic evidence, look what happened here. Agent Cantu comes to the scene. He ultimately, as best as we can tell, Mirandized and arrested and transported Mr. Cruz to the station house. There's no report from Agent Cantu, despite all those constitutional moments. What is our standard of review of the district court's finding that Granado was credible? Isn't it for clear error? Oh, absolutely, Your Honor. Okay. And then, oh, go ahead. That's what I thought too. Well, there's also no report from Agent Salmanan. He's the one who, as best we can tell, did the canine stiff. So he's at the scene. Again, it's another constitutional moment. There's no report, no testimony from him. It's just not the May 14th report that's inconsistent. The district court wrote in its order that Agent Granado's final June 1st report is consistent with the May 14th report and the probable cause and suppression hearings regarding the initial encounter in pursuit of the van, the van that Mr. Cruz was driving. That's not true. First, at the preliminary hearing, which was on May 21st, Agent Bybee said that Granado told Bybee, because Bybee interviews Granado before the preliminary hearing, and Granado told Bybee that after the van passed Granado's vehicle, the van accelerated, sped away. That's not in the May 14th report. That's not in the June 1st report. And that's not what Agent Granado testified to at the suppression hearing in August. So that's one inconsistency that goes beyond the May 14th report regarding the driving behavior of Mr. Cruz. Also, with respect to Mr. Cruz's approach behind Agent Granado, because what happened was Agent Granado said a vehicle was approaching him from behind. It was 2.30 or 3 in the morning. He pulled over to let the vehicle pass. The May 14th report doesn't mention the vehicle approaching Agent Granado's patrol vehicle at any sort of rapid accelerated speed. It doesn't say anything about that. That wasn't mentioned in the May 21st preliminary hearing testimony from Agent Bybee, who again had just interviewed Agent Granado to prepare for that hearing. It's not mentioned in Agent Granado's June 1st report. Then all of a sudden, at the August 6th suppression hearing, Agent Granado gets up and testifies that when this vehicle was approaching from behind, it was approaching at a high rate of speed. So it's just not the May 14th report that's got all these errors, specifically errors with respect to the allegedly erratic driving behavior. Counsel, my recollection was that the report of the agent said that when he started to follow Mr. Cruz's car, that it sped up and tried to evade him. Then he went back and circled back and saw the car parked in a side street with its lights out. Is that correct? I believe there's a nuance in time that distinguishes what I said and what Your Honor's understanding is. At the hearing for the first time, Agent Granado testifies when the van passes him, it accelerates at a high rate of speed on the same road they're on. Then the van turned off onto another road, and that's when it supposedly sped away so fast that it kicked up this cloud of dust and Agent Granado was not able to see the van because of this cloud of dust. So that part of the testimony is consistent with reports after this turn, but it's before the turn where Agent Granado is literally, every version he presents conflicts with another version. But if that incident that you've just reviewed is consistent and the judge wants to credit it, wouldn't that be enough for reasonable suspicion? No, because Agent Granado is so self-contradictory, he's just not believable. And again, we're not- That wasn't the premise of the question. The premise of the question is whether, if that were believed, it is sufficient. I thought. Yes. If it wasn't his end of school question, it's my question. Yes. If you believe Agent Granado, it's sufficient. Yes, I would agree with that. The point I was starting to make is there were so many inconsistencies from the beginning to end, starting with the driving behavior, starting with the gun or next to the gun where he says, he tells me, I took it out and put it on the floorboard of my vehicle, his patrol vehicle, which was a MARC patrol vehicle. Then he tells the judge later, oh, I put it right back in. I left it in the van. With respect to the canine sniff, which his reports, he claims in his June 1st report, and it's also in the May 14th report, he's the one that requested the canine sniff. Yet he gets up and testifies, and he then says, I didn't request the canine sniff, and I don't know why it was ordered. So you have somebody on all these constitutional moments that's conflicting himself, and he's so contradictory, he just can't be the basis for reasonable suspicion. You know, one of the troubling aspects of your argument is I'm having a very difficult time  I mean, you're saying basically that the district judge not only was outside the ballpark, he was somewhere off in Wyoming. And I mean, where do you draw the line? I mean, how do we, sitting here, not having observed the witnesses testifying, not having been present at the critical moments in court, draw this line and say, well, basically the district judge missed the boat so badly that it deserves reversal. That's why I referenced the Thorne case, which said when you have transcripts, and then we have FOHAF, these reports, as well as the preliminary hearing transcript, you can look at the substance. The credibility determination wasn't based on observing the witness, which I know is to some extent it had to have been because there were explanations for many, if not all, of the inconsistencies and changes. And when a person gives that explanation, we see this regularly in immigration cases. There's a contradiction, internal inconsistency. The person is asked, they give an explanation. And then whether to believe that explanation ordinarily is for the finder of fact because they are there. So why would this be different than that? Agent Granato explained the May 14th report. Basically my phrase, good enough for government work, I'll sign a report that I didn't write. He never explained all the other inconsistencies. He never explained giving one answer to me about what he did with the gun when he found it and another answer to the judge. He never explained, oh, I wrote something down. I gave notes to LaPage so she could write this report for me. Then obviously the lawyer question is, great, where are these notes? Let's look at them. Let's see what you wrote down. Try to figure out what happened. And then he says, there are no notes. That was his answer. Counsel, you've exceeded your time, but we'll give you a minute for rebuttal on the time. Thank you for that, Your Honor. Good morning. May it please the Court. I'm Cindy Peterson. I'm an Assistant U.S. Attorney for the District of Montana. And I would like to start first by touching on where you left the argument, which is the statement that the credibility decisions in the case was not on observing the witness. It was 100% on observing the witness in this case in terms of the credibility decisions that were made by the district court. If you look through the transcript, you will see that in this case not only did the district court judge listen to this witness for over an hour at the suppression hearing, but the court itself actually engaged in direct questioning, individual questioning with Agent Granato. If you look at the transcript or the excerpts of record that are between 91 and 106, you'll see that the district court judge himself actually asked almost 70 questions, direct, back and forth, with Agent Granato. So it wasn't just a matter of sitting there listening to the attorneys cross-examine and conduct direct examination. But it was the district judge himself who sat five or six feet away and engaged in this kind of questioning and could get a feel for Agent Granato. It is, however, troubling that there are so many. At the very least, it's remarkably sloppy. And why isn't it worse than that? I think that it is very sloppy, and I want to make clear that no one is defending what Agent Granato did here from the standpoint of the practice of signing a report that he did not thoroughly review. That's terrible practice, no question about it. And you can see when you look at the judge's order that he was troubled by that too and that that was a significant error or a mistake on behalf of Agent Granato. But he considered that mistake, and he still found him to be credible. And I think that is the biggest issue in this case that makes it stand out from the other cases where the courts found that the judge did, in fact, commit clear error. In this particular case, Mr. Cruz was able to cross-examine Agent Granato. He was confronted. All of these issues, all of these discrepancies were brought up and were placed before the district judge. And so the district judge knew he was fully informed. He probed into those issues, and he still found that Agent Granato was credible and issued the order suppressing the evidence. The reason that I think that is particularly important is because it brings us back to the credibility decision that's set out in Anderson, which has been cited by the appellant as one of their key cases here. It talks about that, of course, findings, factual findings are reviewed for clear error. But when you're talking about credibility of witnesses, there's even more greater deference given. There's even greater deference given to the factual findings because it says only the trial judge can be aware of the variations in the demeanor, tone of the voice that bears so heavily on the listener's understanding. So that's why we point directly to that. But beyond that, Your Honors, the other thing that I want to point out is that a lot of the alleged contradictions that have been identified in the briefs and, frankly, here this morning are actually, I think that they're exaggerated and some of them are taken out of context. And I will start by just pointing out two issues that have been brought up in the briefs, and one of them was referenced here this morning. The appellant brought up this morning and in his reply brief at page 10 that the government fails to recognize perhaps the most important inconsistency in Granado's suppression hearing testimony, what he did with the gun. First he said he removed it when questioned, and then when questioned by the court he said he didn't remove it. The problem with that is that if you read the transcripts, that is not a fair and accurate statement of what was presented in the district court. When we were first answering or asking the questions of Agent Granado, it was a walk-through step-by-step of what happened at the stop. That's the point that he's explaining to the district judge, I took the gun out after I found it, I secured it on the floorboard of my car, then I put it back in and I didn't take the gun with me at the end. When the court brings that back up and the statement that is quoted to you saying, then he says he didn't remove the gun. If you look at the context of that transcript, you can see the district court judge was specifically asking him about the end of the stop when Agent Salmonin was going to conduct the canine sniff. That's the context of that. Did you remove the gun? No, I didn't. I left it in the back of the van for the canine sniff to find or during an inventory search. I think that that's been exaggerated. There's another one where it talks about in the court's order that the court clearly didn't understand because it stated in the court order at ER 54 that it referenced Agent Granado testifying at the preliminary hearing as well as the suppression hearing. That is just an unfortunate clerical error in the judge's order. When you read it, you can see that what the judge said was it's consistent with his testimony at both the PC hearing as well as the hearing on the motion to suppress. He simply meant the instead of his. Again, if you read before and you read the pages that follow, there's no question that the district judge knew that Agent Granado was not testifying at the preliminary hearing. So there's a lot of these statements that are referenced as being everything conflicts and everything is inconsistent when the reality is there are not truly that many inconsistencies. But even if there were, the district court heard all of these issues and determined that Agent Granado was credible. And when you look at the decisions, that finding was not so implausible that it needs to be set aside. The appellant has identified that the Thorn decision out of the Second Circuit is one of their best case in support of their argument today. But the problem with that is it was entirely different facts. In the Thorn case, the district court judge had first found that the witness was incredible. It went up for review. It was remanded. Then the district court, without conducting any additional hearing, handed down a decision finding that the witness was credible. So that was the issue in that case is that it was a total flip-flop without anything in the record to support it. And that's not what we have here. And the other thing that the Thorn court points out is it does talk about the substance of the testimony being able to be reviewed by you. But it also says the court's observation of witnesses' demeanors, quote, commands great deference. So it specifically also references that when district court judges have the ability to sit there and watch the witness and make decisions based on that, that that should be given great deference. Your Honors, the only thing I would point out with regards to the first issue that is at play in this case is that yes, there were certainly mistakes made, but not every mistake should result in suppression of evidence. The issue here is whether or not his Fourth Amendment rights were violated. The district court judge knew that was the issue. It probed. Everybody got the ability to look at those discrepancies, and it determined that there was no violations. The last thing that I want to reference very briefly is simply as it relates to the second part of the arguments presented in the brief, which is the overall reasonable suspicion for the stop. I just want to identify that the district court and I believe the appellant also has relied on Comango, but it identifies six factors. There's seven factors that are identified in Diaz-Juarez. That is what we would encourage you to follow, the seven factors. I may have misunderstood opposing counsel's comments this morning, but I understood him to say that if Agent Granados was credible, then he loses, to be blunt, that that is the issue. I may be mistaken about that. I think that is correct, Your Honor. But I will get a clarification, I hope. Thank you, Your Honor. Thank you. Thank you for the extra time, Your Honor. With respect to the gun and the questioning by the court, it's at ER 101. First, the court's asking Agent Granado, do you know why he was directed to the scene to conduct a canine search? Remember, in his June 1st report, Agent Granado says that he thought it would be beneficial to have this canine search. But the response from Agent Granado to the court is, no, I don't know why he was directed there. I just found out that he was going there that morning. That's another example of a constitutional significant discrepancy. The court then continues. This gets to the gun. In any event. No, I have to ask you. You keep saying that every inconsistency is constitutional. I don't understand that. When there's a drugs canine sniff of a vehicle, that's the constitutional. Well, I know. But, okay, that's fair enough. But it just sounds like you're attaching the word constitutional to the inconsistency, which is just an inconsistency. I'm just saying that's an inconsistency that touches on a constitutional moment. The court continues. In any event, once you identified it, located and identified that firearm, that firearm remained in the vehicle, did it not, until Agent Solomon conducted his canine search. Granado's answer, that's correct. Okay. Would you clarify for me? I thought I'd asked you this earlier, but I want to be sure that my understanding is correct. If we were to hold that the district court was within its rights and within appropriate authority to have credited Granado's testimony, does everything else fall away? Yes, Your Honor. Okay. And with respect to that, the government reads into the district court proceedings credibility determinations that aren't in the district court order. There's nothing in there about I sat and observed, I interacted, I questioned. I questioned at length Agent Granado. I saw his behavior. I saw his demeanor. But that's all true. The questions are in the transcript, and the judge was, you know, alive and well and looking at things, right? But the judge based credibility determinations on the supposed consistency between the May 14th, the June 1st, the probable cause, and the suppression hearing testimony. That's all written word. The judge didn't base it in this instance on his human interaction read on the witness, and that's the point we're making. And this idea that we need to have some on-point case, I just don't know where we're going to find an on-point case with, in my opinion, using your word, sloppy. That's a nice word, sloppy police work. Counsel, you've exceeded your time by quite a bit, and I think we understand your position. Right. Thank you. We'd ask that the court reverse and remand for further proceedings. Thank you, counsel. The case just argued is submitted, and we appreciate very helpful arguments from both counsel.
judges: Graber, Gould, Ezra